UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
   **JUDGE**

## LETTER OPINION

February 25, 2009

Cary L. Winslow
Samir Lone
Legal Services of New Jersey
100 Metroplex Drive at Plainfield Avenue
P.O. Box 1357
Edison, NJ 08818
(*Attorneys for Plaintiff Calvin Ross*)

Tomasina Digrigoli
Social Security Administration
26 Federal Plaza
Room 3904
New York, NY 10278
(*Attorney for Defendant Commissioner of Social Security*)

    Re:   Ross v. Commissioner of Social Security
            Civil Action No. 2:08-CV-01205 (WJM)

Dear Counsel:

     Plaintiff Calvin Ross brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking a review of a final determination by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court did not hold oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, the Court **REMANDS** the present matter, specifically with respect to step five of the sequential analysis of disability determination.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for SSI and DIB on August 14, 2004 and August 18, 2004 respectively, alleging disability due to chronic pain syndrome, chest pain, arthritis, reduced range of motion in the left arm, and depression. (R. 243-46, 556-59.) Plaintiff alleges that his disability began on July 23, 1999, after he tripped over a bicycle severely injuring his elbow. (R. 580.) These claims were denied initially on January 11, 2005, and upon reconsideration on April 28, 2005. (R. 205-08, 560-65.) Following a hearing on January 4, 2007, Administrative Law Judge ("ALJ") Joel H. Friedman issued a decision finding Plaintiff not disabled. (R. 12-25, 578-618.) The Appeals Council affirmed this decision on September 13, 2007. (R. 8-10.)

Plaintiff was born on August 31, 1957. He received his GED and attended Hudson Valley Community College. Plaintiff served in the army between 1980 and 1989, receiving an honorable discharge. (R. 386, 583, 597.) His past has been dotted with several unskilled jobs. He last worked as a nursing home dietary porter for six years, where he delivered food trays to residents from a cart, washed dishes, lifted and carried boxes of food to the kitchen, removed trash and garbage, and mopped the floors. (R. 74, 153, 261-62, 386, 612.)

After fracturing his left elbow during a bicycle incident on July 23, 1999, Plaintiff stopped working. (R. 592.) The incident resulted in a steady flow of doctors' visits. Following the incident, Plaintiff received treatment at the Greenville Hospital Emergency room in Jersey City. (R 120-21.) Dr. Mitchell Steinway diagnosed Plaintiff with a severe fracture dislocation of the elbow. Doctors operated on Plaintiff, placing hardware in his arm to stabilize his injury. (*Id.*) Dr. Steinway opined that Plaintiff's orthopedic disability directly resulted from the fall. (*Id.*)

In addition to elbow problems, Plaintiff began experiencing heart issues in late 2001. Plaintiff received treatment from Greenville Hospital, after complaints of dizziness, lightheadedness, and unsteady gait. (R. 129.) Examination revealed that Plaintiff suffered from underlying coronary artery disease, as exhibited by an abnormal electrocardiogram and segmental wall motion abnormalities. (R. 130-56.) On December 17, 2001, Plaintiff underwent left heart catheterization at Christ Hospital in Jersey City. (R. 142.) Doctors diagnosed Plaintiff with "insignificant coronary artery disease, i.e., 50% stenosis of the ostium of the first diagonal branch, mild to moderate diffuse left hypokinesis." (R. 143, 180.) After this procedure, Plaintiff began Thiamine therapy due to his past history of drug abuse. (R. 143.)

Plaintiff returned to Christ Hospital on April 16, 2002 after continuing complaints of chest pain and tightness. At the time of admittance, he was already being treated with Coumadin and Nitro-Dur. (R. 158.) Doctors diagnosed Plaintiff with unstable agina. (R. 157.)

On October 9, 2002, Plaintiff underwent an examination by Dr. Alan Friedman. Dr. Friedman determined that Plaintiff's gait was heel to toe without deviation despite knee stiffness. (R. 182.) While Plaintiff exhibited normal reflexes in the upper and lower extremities, Plaintiff had no reflex in his left elbow, which had practically fused. (*Id.*) Plaintiff possessed a full range of motion in his right upper extremity and both sides of his lower extremities. (*Id.*) Dr. Friedman's examination found patellular tenderness, but no signs of crepitus in either knee. (*Id.*) Plaintiff's joints showed no effusion, erythema, or warmth. (*Id.*) Based on the examination, Dr. Friedman believed that Plaintiff could walk at a reasonable pace without a hand-held assistance device. (R. 185.)

Dr. Oleg Frank performed a consultive examination on December 6, 2002. (R. 187-93.) Dr. Frank reported that Plaintiff appeared alert, conscious, oriented, and casually dressed. (R. 188.) The examination revealed that Plaintiff had clear lungs and no signs of edema, clubbing, cyanosis, or joint effusion in his extremities. (*Id.*) While Plaintiff's left elbow had no range of motion, Dr. Frank noticed crepitation of both knees and evidence of left ventricular hypertrophy. (R. 187-88.) An electrocardiogram showed sinus rhythm of 99 with frequent premature ventricular contractions noted. (R. 189.) Although Plaintiff had the ability able to sit, stand, and possibly lift objects with his right extremities, he remained unable to care for himself. (R. 189.) Dr. Frank concluded that Plaintiff may need an imaging study, physical therapy, and adequate pain management. (*Id.*)

Beyond physical impairments, Plaintiff began experiencing psychological problems in 2004. On March 10, 2004, Dr. Medhat El-Amir diagnosed Plaintiff with bipolar disorder and chronic pain syndrome of the left elbow. (R. 441-63.) Several months later, Plaintiff started to receive therapy and psychiatric treatment with psychiatrist Dr. Victor Hernandez at the Jersey City Medica Center. (R. 361-79.) In a comprehensive psychiatric examination, dated June 24, 2004, Dr. Hernandez found Plaintiff's thought processes to be relevant, coherent, and goal-oriented. (R. 365-66.) Plaintiff exhibited a Global Assessment of Functioning ("GAF") of 40-45 on a scale of 100, meaning Plaintiff had a depressive disorder that needed treatment. (*Id.*) Dr. Hernandez prescribed Wellbutrin XL 150 ml OD, with Trazadone 50 for Plaintiff's insomnia. (R. 365.)

Dr. Friedman performed an additional orthopedic examination on November 19, 2004. (R. 381.) Despite knee stiffness, Plaintiff possessed the ability to ascend and descend the examination table independently. (*Id.*) His gait was heel to toe without

deviation. (*Id.*) Plaintiff retained a full range of motion in his upper and lower extremities, but exhibited no reflex abilities in his left elbow. (*Id.*) As a result of being fused, Plaintiff's left elbow only had 15 degrees of extension and could only flex about 30 degrees with supination and pronation. (*Id.*) Dr. Friedman found no ligament instability and diagnosed Plaintiff with crepitus on both knees with possible osteoarthritis. (R. 381.)

Plaintiff also had a consultive psychological examination by Dr. Anthony Candela on December 8, 2004. (R. 385.) Plaintiff denied any auditory or visual hallucinations and did not exhibit any panic disorder, anxiety, phobic reactions, obsessive compulsive behavior, or paranoid thinking. (R. 386-87.) Dr. Candela concluded that claimant suffered from mild to moderately severe depression and functioned within the low-average range of intellect. (*Id.*)

Several weeks later, on December 29, 2004, a non-examining medical consultant from the New Jersey Disability Determination Services ("DDS") found that arthritis of the left elbow, cardiomyopathy, and osteoarthritis of the knees limited Plaintiff's ability to work. (R. 388-95.) The DDS determined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, further opinining that any strenuous and repetitive pushing and pulling with Plaintiff's left upper extremity would be extremely limited. (R. 389.) The medical consultants stated that Plaintiff could stand or walk during about half of an eight-hour work day and sit for approximately six. (*Id.*) After examining his medical history, the DDS believed that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. 390.)

On January 3, 2005, DDS mental health consultants, Drs. Amy Brams and Richard Nobel concluded that Plaintiff suffered from a depressive disorder and a history of alcohol and cocaine abuse. (R. 403, 408.) Dr. Brams found that Plaintiff was moderately limited in a number of areas, including understanding and remembering detailed instructions, carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance and punctuality, completing a workday without interruption due to psychologically based symptoms, performing at a pace without an unreasonable number and length of rest periods, accepting instructions, responding to criticism, maintaining socially appropriate behavior, and adhering to standards of neatness and cleanliness. (R. 396-97.) Dr. Brams stated that Plaintiff had moderate difficulties in maintaining social functioning, as well as moderate difficulties in maintaining concentration, persistence, or pace. (R. 410.) Overall, Dr. Brams found that Plaintiff was "able to follow simple instructions, attend and concentrate, keep adequate pace and persist, relate and adapt to routine tasks in a work situation." (R. 398.) Dr. Nobel concurred with Dr. Brams findings on January 5, 2005. (R. 398.)

On January 27, 2005, Dr. El-Amir performed a Physical Capacities Evaluation, determining that Plaintiff could occasionally lift 10 pounds. (R. 414.) The examination revealed that Plaintiff could only use his right hand for repetitive actions and could not bend, squat, crawl, climb, or reach above his shoulder level. (*Id.*) Plaintiff was limited to two hours standing or walking in an eight hour day. (*Id.*) Dr. El-Amir believed that Plaintiff was unable to work due to chronic pain syndrome and fatigue. (R. 417-19.)

Due to the passage of time, on February 9, 2007, Dr. Candela performed an additional consultative mental examination. (R. 237-42, 487.) During the examination, Plaintiff complained of suicidal thoughts, but reported that he had only made one attempt to kill himself through a pill overdose in 2004. (R. 237-42, 487.) The evaluation revealed that Plaintiff had a lower than average level of intelligence and suffered from moderate depression. (R. 488.) Dr. Candela diagnosed Plaintiff with mild chronic dysthymia with a GAF of 50. (R. 239.) Plaintiff was moderately limited in responding appropriately to pressures in a usual work environment. (R. 241.)

In a decision dated August 6, 2007, the ALJ engaged in a detailed analysis pursuant to the five-step sequential process found in 20 C.F.R. § 404.1520(a)(4)(i)-(v). The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 23, 1999. (R. 17.) The ALJ further found that Plaintiff suffered from severe impairments, specifically depression, arthritis of the left elbow, cardiomyopathy, and a history of alcohol abuse. However, the ALJ concluded that these conditions did not meet or equal the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. (R. 18-20.) Based on Plaintiff's severe impairments, the ALJ determined that Plaintiff retained the residual functioning capacity ("RFC") to perform simple, routine work in a low contact setting, which involved limited reaching and handling with his left arm and did not require strenuous or repetitive use of his left arm. (R. 20-21, 23.) The ALJ further found that Plaintiff was unable to perform his past relevant work as a dietary porter. (R. 24.) After considering Plaintiff's limitations, age, education, and experience, the ALJ followed Rule 202.20 of the Medical Vocational Guidelines, relying upon vocational expert evidence to find that there was other work that Plaintiff could perform. (R. 24-25.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 25.)

## STANDARD OF REVIEW

A district court reviews the factual findings of the Commissioner to determine whether they are supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence upon which the ALJ can base his factual findings exists, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S. §

5

405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm the decision. *See Izzo v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 280, 284 (3d Cir. 2006) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

## DISABILITY EVALUATION

An individual may be entitled to Social Security benefits upon a finding of disability by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). A disabling impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An individual is only considered to be disabled if the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The ALJ must demonstrate the relevant evidence used to deny a claimant's disability benefit is such that a "reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Social Security Administration has established a five-step sequential evaluation process to determine whether an individual is disabled. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); *see* 20 C.F.R. § 404.1520. Under step one, the Commissioner determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). For step two, the Commissioner considers the medical severity of the claimant's impairments, determining whether the claimant suffers from a "severe"

6

impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If a claimant suffers from a severe impairment, the Commissioner proceeds to step three and analyzes whether the claimant's severe impairment matches an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listings) or its medical equivalent. If Commissioner finds that such a match exists, the claimant is automatically classified as disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1520(e).

However, if the claimant does not automatically qualify, the Commissioner continues to step four and assesses whether the claimant retained the RFC to perform past relevant work. If the claimant retained such RFC, he or she cannot receive disability benefits. 20 C.F.R. § 404.1520(a)(4)(iv). The Commissioner next determines, in step five, whether the claimant can perform other work that exists in significant numbers in the national economy–given the claimant's medical impairments, age, education, past work experience, and RFC. If the claimant can perform such other work, he or she fails to qualify for benefits. 20 C.F. R. § 404.1520(a)(4)(v).

The claimant bears the burden to prove the first four factors. Once the claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner "to prove that there is some other kind of substantial gainful employment he is able to perform." *Kangas*, 823 F.2d at 777.

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and specifically challenges the ALJ's analysis at step five of the evaluation. Plaintiff presents two arguments. First, he maintains that the hypothetical presented by the ALJ and relied upon by the vocational expert ("VE") was defective because it failed to incorporate Plaintiff's limitation of moderate deficiencies in concentration, persistence, or pace. Second, Plaintiff asserts that given his moderate mental difficulties, the ALJ's conclusion with regards to step five cannot be reconciled with the evidence provided by the VE.

As previously noted, at the fifth stage of the disability analysis, the Commissioner bears the burden of proving that a "claimant is able to perform work available in the national economy." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To meet this burden, the Commissioner normally relies in large measure upon the testimony of a VE. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Where the Commissioner's decision rests upon the response of a VE, the "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). "'[G]reat specificity' is required when an ALJ incorporates a

claimant's mental or physical limitations into a hypothetical." *Id.* at 554-55 (quoting *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir.2002)).  Medically supported limitations that are otherwise uncontroverted on the record, but not included in the hypothetical posed to the expert, preclude reliance on the expert's response.  *Rutherford*, 399 F.3d at 554.

During Plaintiff's hearing, the ALJ posed the following hypothetical question to the VE:

> Assume for a moment an individual the claimant's age, he's a younger individual, his education is 2 years of college or high school plus, his past relevant work experience.  Assume for, again purposes of the hypothetical, and they found him capable of performing the exertional demands of light work insofar as he could lift 20 pounds occasionally, 10 pounds frequently.  He could stand or walk for a total of 4 hours in an 8-hour day.  He's got limited use of his upper extremities in that he can do no strenuous or repetitive use of his left arm.  He has limited reaching and handling with the left arm.  He can only occasionally use them, and you did see the limits of his reach.  He can't fully extend the elbow either up or forward.  He could occasionally climb.  He's got problems with his knees which as a result of which he could occasionally climb ramps and stair and could occasionally crouch.  He could never climb ladders, ropes, or scaffolds or crawl.  I'm sorry, and he could do basically the other postural activities, again would be limited to occasional.  He would also be limited due to depression.  I'm sorry, he would also have to avoid exposure to hazards such as heights.  He would also be limited to simple, routine jobs. . . . Would be limited to simple, routine jobs in–well I guess simple routine jobs would be, would be–in a low contact setting.  Obviously such a person could not do the claimant's past relevant work, would there be other jobs that such a person could perform?

(R. 614-15.)

This hypothetical sufficiently reflected all of a Plaintiff's impairments supported by the record.  The ALJ found that Plaintiff retained RFC to perform light work, involving lifting twenty pounds occasionally and ten pounds frequently, standing and walking for at least two hours for a total of four hours, and sitting for about six hours in an eight-hour workday. (R. 21.)  Due to the elbow fracture, Plaintiff was limited to employment, which involved limited reaching and handling with his left arm and did not require strenuous or repetitive use of his left arm. (*Id.*)  Plaintiff's depression and alcohol abuse history limited him to simple routine jobs.  (*Id.*)

8

The record supports the ALJ's findings with regards to Plaintiff's physical limitations. Dr. Friedman determined that Plaintiff could walk at a reasonable pace without a hand-held assistive device, while Dr. Frank opined that Plaintiff was able to sit, stand and walk short distances, and possibly carry and handle objects with his right upper extremity. (R. 185, 189.) The DDS concluded that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, sit for up to six hours, and stand and/or walk for two hours in an eight-hour day. Plaintiff suffered limitations with strenuous and repetitive pushing and pulling with the left upper extremity, but could occasionally climb ladders, ropes, or scaffolds. He could frequently climb, balance, stoop, kneel, crouch, and crawl. (R. 389-90.) However, Plaintiff's left arm was limited to occasional use for reaching and handling and he needed to avoid concentrated exposure to heights. (R. 391-92.)

The record also supports the ALJ's finding with respect to Plaintiff's mental abilities. Both Dr. Candela and Dr. Hernandez determined that Plaintiff suffered from depression. Dr. Candela found that Plaintiff did not have any auditory or visual hallucinations and did not exhibit any panic disorder, anxiety, phobic reactions, obsessive compulsive behavior, or paranoid thinking. (R. 386-87.) Dr. Hernandez noted that Plaintiff's thought processes were relevant, coherent, and goal-oriented. (R. 365-66.) The ALJ placed weight on the conclusions of DDS mental health consultants, Dr. Brams and Dr. Nobel, based on the fact that they are "highly qualified and are experts in Social Security disability evaluation." (R. 23.) These doctors opined that Plaintiff suffered from depression and a history of drug and alcohol abuse. Overall, they believed that Plaintiff was "able to follow simple instructions, attend and concentrate, keep adequate pace and persist, relate and adapt to routine tasks in a work situation." (R. 398.)

In addition, the record indicates that Plaintiff suffered from a limitation due to difficulties in concentration, persistence, or pace. Dr. Brams and Dr. Nobel explicitly stated that Plaintiff suffered from moderate difficulties in maintaining social functioning, as well as moderate difficulties in maintaining concentration, persistent, or pace. (R. 410.) They found that Plaintiff possessed moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, performing activities within a schedule, completing a workday without interruption due to psychologically based symptoms, and performing at a pace without an unreasonable number and length of rest periods. (R. 396-97.)

In the hypothetical question, the ALJ recited all of Plaintiff's limitations with particularity. The question lists all of Plaintiff's physical limitations. It also states a limitation due to depression and that the individual would be limited to "simple, routine jobs" in a "low contact setting." The phrase "simple, routine work" accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace. *See Najmi-Nejad v.*

9

*Barnhart*, 75 Fed. Appx. 60, 64 (3d Cir. 2003) (noting that phrase "simple routine work" encompasses difficulties in "concentration, persistence, or pace."); *see also McDonald v. Astrue*, 293 Fed. Appx. 941, 946 (3d Cir. 2008) (stating that the phrase "simple, routine tasks" sufficiently accounts moderate difficulties in concentration, persistence, or pace).

However, the ALJ's conclusion, at step five, with regards to whether Plaintiff could perform work that exists in significant numbers in the national economy is not supported by substantial evidence. Based on the ALJ's hypothetical, the VE opined that such an individual could still perform a narrow range of "simple routine jobs": scale operator, weld inspector, sorter, and gate guard. The VE testified that there were approximately 1,400 such jobs locally, and in excess of 25,000 nationwide. (R. 613-14.)

When the ALJ asked a more specific follow-up question, the VE provided contradicting evidence. The ALJ asked: "If a person had whether it be due to pain or depression, if the person had difficulty maintaining attention and concentration, persistence, and pace on even simple, routine jobs, would he be able to do those jobs?" The VE responded: "With those limitations, in my opinion, he would not be able to work in the competitive labor market." (R. 614-15.) Since the phrase "simple routine work" generally accounts for moderate difficulties in concentration, persistence, or pace, the answers to these two questions should have been similar. In this case, the answers differed and the reason for the difference is not clear from the record.

As stated above, Plaintiff suffered from moderate difficulties in concentration, persistence, and pace. In light of the Commissioner's burden under step five and since the record is not clear as to whether someone with Plaintiff's physical and mental limitations could work in the national economy, the present matter will be remanded. The ALJ should clarify whether a person with Plaintiff's physical and mental limitations, as well as moderate difficulties in concentration, persistence, or pace, who would be limited to "simple routine tasks" can perform work that exists in significant numbers in the national economy.

## CONCLUSION

For the foregoing reasons, the Court **REMANDS** the present matter, specifically with respect to step five of the sequential analysis of disability determination. An appropriate Order accompanies this Letter Opinion.

s/William J. Martini
**William J. Martini, U.S.D.J.**